**In re ARDMORE SALES CO. t/a Tem-Tee Nuts, Debtor.**

**Olive HAFER and Clayton Hafer, Plaintiffs,**

**v.**

**ARDMORE SALES CO. t/a Tem-Tee Nuts, Defendant,**

**and**

**The Creditors' Committee, Intervening Defendant.**

Bankruptcy No. 81–03241G.
Adv. No. 81–1953G.

United States Bankruptcy Court,
E. D. Pennsylvania.

March 31, 1982.

John A. Wetzel, Philadelphia, Pa., for plaintiffs, Olive and Clayton Hafer.

Rudolph J. DiMassa, Jr., Philadelphia, Pa., for debtor/defendant, Ardmore Sales Co. t/a Tem-Tee Nuts.

Alison Douglas Knox, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for creditors' committee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue at bench is whether the debtor's landlords are entitled to relief from the automatic stay imposed by § 362 of the Bankruptcy Code ("the Code") to permit them to terminate a lease they have with the individual who is the president of the debtor corporation and to evict the debtor from the premises. Although we find that the debtor was not a party to the lease, we conclude nonetheless that the landlords are not entitled to relief from the stay because the debtor has at least a possessory interest in the premises. In addition, the landlords' attempted termination of the lease was not valid under its terms. Furthermore, although we find that the president of the debtor corporation has the right to terminate the lease and evict the debtor, we conclude that, because the lease is valuable, the president is barred from terminating it because of the fiduciary duty which he owes to the debtor corporation.

The facts of this case are as follows:[1] On August 25, 1981, certain creditors of Ardmore Sales Co., t/a Tem-Tee Nuts ("the debtor") filed an involuntary petition for a reorganization of the debtor under chapter 11 of the Code. The debtor filed a consenting answer to that petition on September 14, 1981, and has continued as debtor in possession since that time. Thereafter, Lee Molineux ("Molineux"), the president and the 100% shareholder of the debtor, sought and obtained court approval to be retained as the president of the debtor.

On November 23, 1981, Clayton and Olive Hafer ("the landlords") sent a letter to Molineux giving notice of the termination of the lease between the landlords and Molineux of the premises which the debtor occupies as a store.[2] The creditors' committee filed a motion to restrain the debtor, Molineux and the landlords from terminating that lease. At the hearing held on that motion, we concluded that, since the debtor had at least a possessory interest in the premises, the landlords would have to obtain relief from the automatic stay provisions of § 362(a) of the Code before they could proceed to terminate the lease and

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. The leased property in question is the first floor store located at 2408 Haverford Road, Ardmore, Pennsylvania. The second floor of that building is occupied rent free by Molineux,

evict the debtor.[3] The landlords accordingly filed the instant complaint for relief from the stay to which the debtor, through Molineux, filed a consenting answer. The creditors' committee subsequently filed a motion to intervene as a party defendant, which motion we granted.

The basis of the landlords' complaint is that the lease which they seek to terminate is not a lease with the debtor corporation but rather is a lease with Molineux as an individual and that the debtor only occupied the premises under an oral sublease from Molineux. Consequently, the landlords assert that the debtor has no rights under the lease and that, therefore, they should be permitted to terminate the lease and evict the debtor.

The creditors' committee raises several defenses in opposition to the landlords' complaint. The committee asserts initially that the lease was made between the landlords and the debtor corporation, not between the landlords and Molineux, individually. In support of this assertion, the committee points to the fact that, at the time the lease was executed, the debtor—not Molineux—was in possession of the store premises. Furthermore, the rent due under the lease has always been paid by the debtor's corporate check and the debtor initially listed the lease as one of its business leases in the schedules which it filed in the chapter 11 proceedings. Finally, the committee argues that the debtor could only act through Molineux in executing the lease because he is the sole shareholder and officer of the debtor corporation.

■ While we agree with the committee that the debtor corporation could only act through Molineux, from the testimony we conclude that in this instance Molineux was not acting for the debtor in executing the lease but was acting for himself. Both the landlords and Molineux testified that they intended the lease to be between the landlords and Molineux, individually, not between the landlords and the corporation. Furthermore, the signature on the lease evidences that Molineux signed the lease as an individual and not as an officer of the debtor corporation.[4] In addition, the fact that rent was paid to the landlords by the debtor's corporate check is consistent with the testimony of the landlords and Molineux that the debtor was subleasing the premises from Molineux on the condition that it pay the rent directly to the landlords. The fact that the debtor listed the lease as one of its assets in its schedules is also not inconsistent with a finding that the debtor is a sublessee of the store premises. Hence, we conclude that the debtor corporation is not a party to the lease and may not directly enforce the terms of that lease.

■ However, the committee also asserts that we should closely scrutinize the lease transaction in question because the parties thereto (the landlords and Molineux) are all insiders of the debtor corporation.[5] The

individually, as an apartment with the permission of the landlords, his grandparents.

3. *See, e.g., In re Lewis,* 15 B.R. 643 (Bkrtcy.E. D.Pa.1981); *In re Quick Catering Co., Inc.,* 10 B.R. 250, 7 B.C.D. 534 (Bkrtcy.D.Nev.1981).

4. The case which the creditors' committee cites for the proposition that such a signature is not controlling held only that the automatic stay provisions of § 362(a) of the Code protects property that is in the debtor corporation's possession even though title to that property is in the president of the corporation rather than in the corporation itself. *See In re Quick Catering Co., Inc.,* 10 B.R. 250, 7 B.C.D. 534 (Bkrtcy.D.Nev.1981). We agree with the decision of the court in *Quick Catering* that the automatic stay protects a debtor's bare possessory interest in property and we so held at the

earlier hearing in this case on the committee's motion to restrain the parties from terminating the lease. *See also, In re Lewis,* 15 B.R. 643 (E.D.Pa.1981). However, the fact that the debtor may be in possession of property does not necessarily mean that the debtor has title to that property or has any rights under a lease of that property when it was not a party to that lease.

5. Section 101(25) of the Code defines insider to include:

(B) if the debtor is a corporation—
　(i) director of the debtor;
　(ii) officer of the debtor;
　(iii) person in control of the debtor;
　(iv) relative of a general partner, director, officer, or person in control of the debtor.
11 U.S.C. § 101(25).

committee contends that any transactions involving insiders should be examined by the court to ensure that they were arms-length transactions. In the instant case, the committee points to the fact that the lease in question was made between Molineux and his grandparents, that Molineux was the one who initiated both the execution and the termination of the lease, and that Molineux intends to use the premises in question to conduct the same business as the debtor did, to Molineux's own benefit and to the detriment of the debtor and its creditors. While we agree that contracts made by an insider of a debtor corporation may be subject to closer scrutiny by this court, we do not think that simply because a contract is made by an insider that contract should be modified by the court to benefit the debtor and its creditors. Only where there has been a breach of the fiduciary duty owed by the insider to the debtor in the execution or implementation of that contract would we foresee interfering with the contract rights of the parties thereto.

■ In the instant case, however, the creditors' committee contends that Molineux did breach his fiduciary duty to the debtor corporation initially by making the lease of the premises run from his grandparents to himself rather than to the debtor corporation. By doing so, the committee argues, Molineux seized for himself an opportunity that was available to the debtor corporation thereby breaching his fiduciary duty as the sole shareholder and officer of the corporation.[6] We disagree with the argument of the creditors' committee on this point because we find that there is no evidence to support a finding that the opportunity which Molineux took (i.e., obtaining a lease for the store premises) was available to the debtor corporation. Instead, all of the testimony on this point (by Molineux and by Olive Hafer) was that the landlords did not want to lease to the corporation and agreed only to lease the premises to their grandson, Molineux, who subsequently subleased the premises to the debtor corporation. Therefore, rather than using his corporate position for his personal benefit, Molineux in this instance used his personal position with his grandparents to bestow a benefit on the debtor corporation. This was not, we conclude, a breach of Molineux's fiduciary duty to the corporation.

■ However, with respect to the attempted termination of lease, we conclude that Molineux breached his fiduciary duty to the debtor corporation. Both Molineux and Olive Hafer testified that it was Molineux, not the landlords, who suggested that the lease be terminated, who prepared the termination notice for the landlords to sign and who mailed that notice to himself. By doing so, Molineux meant to cause the debtor corporation to lose its most valuable store location. What is more, Molineux admitted that, once the debtor is evicted, he intends to use the leased premises to conduct the same business as that in which the debtor is engaged, to Molineux's personal benefit and to the debtor's detriment. Thus, we conclude that by causing the lease to be terminated, Molineux intended to seize for himself an opportunity which the debtor corporation previously had and, thus, breached the fiduciary duty which he owes

---

**6.** *See, e.g., Seaboard Indus., Inc. v. Monaco,* 442 Pa. 256, 276 A.2d 305 (1971); *Lutherland, Inc. v. Dahlen,* 357 Pa. 143, 53 A.2d 143 (1947). The creditors' committee also cites 3 Fletcher, Cyclopedia of Corporations, § 861.1 which states:

[W]hen there is presented to a corporate officer a business opportunity which the corporation is financially able to undertake *and which, by its nature, falls into the line of the corporation's business and is of practical advantage to it,* or is an opportunity in which the corporation has an actual or expectant interest, the officer is prohibited from permitting his self-interest to be brought into conflict with the corporation's interest and may not take the opportunity for himself.

\* \* \* \* \* \*

If it is the duty of officers in a particular case to enter into a contract, or to purchase or take a transfer of property, on behalf of the corporation, and, in violation of this duty, they enter into the contract or acquire the property personally, they will not be permitted to retain the benefit, but will be held as trustees for the corporation.

(Emphasis supplied).

to the debtor corporation as sole shareholder and officer of that corporation.[7]

■ However, such a holding is not possible with respect to the landlords. Although they are relatives of Molineux and thus insiders of the debtor corporation under the Code, the landlords are not themselves shareholders, officers or directors of the debtor corporation and, consequently, do not owe it any fiduciary duty themselves.[8] Therefore, any termination of the lease by the landlords would not be proscribed as a breach of any fiduciary duty.

■ However, we find that the landlords are nonetheless prevented from terminating the lease in question by the terms of that lease. In the instant case there has apparently been no default by the lessee, Molineux, or by the sublessee, the debtor, and, consequently, the landlords may not terminate the lease on that ground.[9] In addition, although the lease contains a standard termination clause which allows either party to terminate the lease on notice to the other party,[10] that clause did not provide for the amount of notice required to be given. Furthermore, we find that that clause, which is contained in the printed portion of the lease form, was superseded by the typewritten clause on the front of the lease which provides: "Lessee has the right to renew this lease at his option. Otherwise, it will renew automatically from year to year."[11] Although this language is less than crystal clear, we conclude from that clause, and from the testimony presented as to the circumstances of the execution of the lease, that the parties to the lease intended the lease to run from year to year at the lessee's sole option. We therefore conclude that the landlords did not reserve to themselves any right to terminate the lease, absent any default by the lessee, and, consequently, the landlords' attempt to terminate the lease was not valid. Furthermore, although it appears that the lessee, Molineux, may have the right under the lease to terminate it, we have already determined that he may not take any action which would harm the debtor corporation because of the fiduciary duty he owes to it.

As we have stated, lacking a default by the lessee, we conclude that the landlords are not entitled to relief from the stay under § 362(d)(1) "for cause" to permit them to recover possession of the store premises from the debtor. We also find that the landlords are not entitled to such relief under § 362(d)(2) because the evidence was uncontradicted that the premises, being the debtor's most profitable store location, are necessary to an effective reorganization of the chapter 11 debtor.

■ Finally, we conclude that the landlords are not entitled to relief from the stay under § 362(d)(1) on the theory that they are not adequately protected. At the hearing the landlords offered testimony that the fair market value of the premises in question is $800.00 per month while the rent due under the lease, and being paid by the debtor under the oral sublease, is $225.00 per month. Therefore, the landlords assert that their interest in the property is not being adequately protected. We disagree. The landlords are only entitled to the rental provided in the lease, which is $225.00 per month. In addition, although the landlords may increase the rent due under that lease, the lease provides that the landlords may do so only if they give written notice of the change in rent prior to the end of the lease

---

7. *See* note 6 *supra. See also, Brown v. Presbyterian Ministers Fund,* 484 F.2d 998 (3d Cir. 1973) (officer of corporation was guilty of breach of fiduciary duty where, on morning of filing of bankruptcy petition, he appropriated to himself corporate opportunities to the detriment of the corporation and the corporation's creditors).

8. Section 1408 of the Pennsylvania Business Corporation Law provides only that officers and directors of a corporation have a fiduciary duty to it. *See* Pa.Stat.Ann. tit. 15, § 1408 (Purdon).

9. *See* Exhibit A (and C–4) at 3, 1st paragraph.

10. *Id.* at 3, 14th paragraph.

11. *Id.* at 1.

term (which is December 31 of each year).[12] Since, in this case, there was no evidence that the landlords had given such a notice, we conclude that the landlords are only entitled to rent as provided in the lease of $225.00 per month at least until the expiration of the current term (December 31, 1982). We find that, for this amount, the landlords are adequately protected.

12. *Id.* at 3, 14th paragraph.