OPINION
{¶ 1} Plaintiff-appellant Kenneth M. Stumpff (hereinafter "Stumpff") appeals from a decision of the Montgomery County Court of Common Pleas which adopted the decision of the magistrate which found for the defendant-appellee Richard L. Harris (hereinafter "Harris"). Before their personal and professional relationship deteriorated, Stumpff and Harris were each 50% co-owners of an auto salvage business located in Dayton, Ohio. Stumpff initially filed the suit alleging breach of fiduciary duty by Harris as well as numerous instances of self-dealing on the part of Harris contrary to the interests of Stumpff. Along with his answer to Stumpff's complaint, Harris filed a counterclaim requesting judicial dissolution of the business as well as a restraining order barring Stumpff from the business premises.
 {¶ 2} Following a bench trial held on April 26, 2004, and ending on May 24, 2004, the magistrate issued a judgment on November 24, 2004, in favor of Harris and ordering Stumpff to pay the costs of the action. Specifically, the magistrate recommended the dismissal of Stumpff's claims against Harris and ordered the judicial dissolution of the corporation and liquidation of its assets.
 {¶ 3} Stumpff responded by filing objections to the magistrate's decision on December 8, 2004. On December 6, 2005, the trial court issued a decision overruling Stumpff's objections and adopting the decision of the magistrate. Stumpff filed a notice of appeal with this Court on December 19, 2005.
 I {¶ 4} As previously stated, Harris and Stumpff were 50% co-owners of Mahaffey's Auto Salvage, Inc. (hereinafter "Mahaffey's"). Mahaffey's has been in existence since the 1960's at which time Clara Mahaffey operated the business as a sole proprietorship. After it was closed for a period of time, Clara Mahaffey, with the help of Harris and Stumpff, reopened the business on May 13, 1993.
 {¶ 5} Until Clara Mahaffey died on March 10, 2002, she owned the land upon which Mahaffey's was situated and charged the company rent for the use of the property. Initially, she charged the business $600.00 for rent, but eventually raised the price to $1,200.00 a month. Harris, Clara Mahaffey's foster son, inherited the land upon her death and raised the rent to $1,500.00 a month. Harris, who is listed as president of the company in the corporate documents, testified that he is in charge of the day to day operation of the salvage yard and also handles the bookkeeping. In March of 2004, two months prior to the trial before the magistrate, Harris raised the rent on the property to $2,500.00 a month without consulting Stumpff.
 {¶ 6} Stumpff, who was nineteen years old when he began working for Clara Mahaffey, testified that he never received a formal education and is, essentially, a functioning illiterate. His main duties at Mahaffey's included operating the wrecker and procuring vehicles for salvage purposes. Stumpff was listed as the treasurer in the corporate documents, and while employed at Mahaffey's, he was responsible for collecting the money received each day and keeping it secure in a floor safe located at his home. Stumpff testified that he would retrieve the money at the request of Harris so that it could be deposited at their bank.
 {¶ 7} In May of 2001, Stumpff's wife of twenty-four years passed away, and he began a period of bereavement leave which ultimately lasted two years. During that time, Mahaffey's continued to pay Stumpff $2,500.00 a month as well as provide him health insurance benefits. Although Stumpff asserts otherwise, Harris testified that he asked him to return to work on numerous occasions, but Stumpff refused and allegedly threatened Harris. Consequently, Harris stopped paying a salary to Stumpff and discontinued his health benefits in May of 2003. Additionally, Harris testified that he advised Stumpff that he would call the police if Stumpff attempted to enter the business.
 {¶ 8} On July 1, 2003, Stumpff withdrew $16,000.00 from Mahaffey's corporate account using two checks made out to "cash". The withdrawal was made by Stumpff without Harris's consent. Harris testified that these transactions left approximately $113.00 in Mahaffey's account and made it difficult for the business to cover checks it had already written.
 {¶ 9} Harris and Stumpff then attempted to enter into negotiations for one of them to buy out the other's interest in the business. It is apparent from the results of these negotiations that they had widely differing opinions as to the value of Mahaffey's. At one point, Harris offered Stumpff approximately $30,000.00 for his interest in Mahaffey's, but Stumpff declined, apparently convinced that the business was worth significantly more.
 {¶ 10} At trial, Stumpff offered the testimony of Roger Hall, a salvage yard operator, who testified that Mahaffey's was worth approximately $400,000.00 to $450,000.00. Hall based his testimony on his own knowledge and experience as a salvage yard operator as well as a two-hour visual inspection of the business premises. The magistrate ultimately discounted Hall's opinion regarding the fair market value of Mahaffey's finding that he was neither offered nor accepted as a valuation expert at trial.
 {¶ 11} Harris, on the other hand, offered the testimony of an accountant, William Driver, C.P.A., with respect to the value of the business. Based on a review of Mahaffey's financial records and current inventory, Driver testified that Stumpff's share of the business was worth between approximately $17,000.00 and $27,300.00, based upon the business' liquidation value. The trial court correctly noted that although Driver was not accepted as a valuation expert at trial, Stumpff did not object to his opinion concerning the fair market value of the business.
 {¶ 12} After buy-out negotiations failed, Stumpff filed suit, claiming that Harris breached his fiduciary duty by: 1) ousting him from his employment position at Mahaffey's and refusing to pay his salary and health benefits; 2) converting business opportunities to his own advantage; and 3) refusing to permit Stumpff to enter the business premises. Harris filed a counterclaim seeking judicial dissolution of the business.
 {¶ 13} As aforementioned, the matter was heard before a magistrate who issued judgment in favor of Harris and dismissed Stumpff's claims for breach of fiduciary duty. The magistrate also ordered that Mahaffey's Auto Salvage, Inc. be judicially dissolved pursuant to R.C. § 1701.91(D). The trial court subsequently overruled Stumpff's objections to the magistrate's decision and adopted said decision in an opinion issued on December 6, 2005. It is from this judgment that Stumpff now appeals.
 II {¶ 14} Stumpff's first assignment of error is as follows:
 {¶ 15} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY RETROACTIVELY STRIKING THE VALUATION TESTIMONY OF STUMPFF'S EXPERT THUS EFFECTIVELY NEGATING ANY POSSIBILITY OF STUMPFF PROVING HIS `SQUEEZE OUT' CLAIM."
 {¶ 16} Pursuant to Civ. R. 53(E)(3), a party who disagrees with a magistrate's proposed decision must file objections to said decision. When reviewing objections to a magistrate's decision, the trial court is not required to follow or accept the findings or recommendations of its magistrate. Breece v. Breece
(Nov. 5, 1999), Darke App. No. 99-CA-1491; Seagraves v.Seagraves (Aug. 25, 1995), Montgomery App. Nos. 15047 and 15069. In accordance with Civ. R. 53, the trial court must conduct an independent review of the facts and conclusions contained in the magistrate's report and enter its own judgment. Dayton v.Whiting (1996), 110 Ohio App.3d 115, 118, 673 N.E.2d 671. Thus, the trial court's standard of review of a magistrate's decision is de novo.
 {¶ 17} An "abuse of discretion" standard, however, is the appellate standard of review when reviewing a trial court's adoption of a magistrate's decision. Claims of trial court error must be based on the actions taken by the trial court, itself, rather than the magistrate's findings or proposed decision. When an appellate court reviews a trial court's adoption of a magistrate's report for an abuse of discretion, such a determination will only be reversed where it appears that the trial court's actions were arbitrary or unreasonable. Proctor v.Proctor (1988), 48 Ohio App.3d 55, 60-61, 548 N.E.2d 287. Presumptions of validity and deference to a trial court as an independent fact-finder are embodied in the abuse of discretion standard. Whiting, supra.
 {¶ 18} An abuse of discretion means more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, an appellate court may not merely substitute its judgment for that of the trial court.Berk v. Mathews (1990), 53 Ohio St.3d 161, 169,559 N.E.2d 1301.
 {¶ 19} In his first assignment, Stumpff contends that the trial court erred by striking the testimony of his expert, Roger Hall, with respect to the valuation of the business. Without Hall's testimony admitted into evidence, Stumpff asserts that he is unable to prove his claim that Harris attempted to deprive him of the fair market value of Mahaffey's. Hall's testimony, if believed, places the value of the business at $450,000.00, while Harris' expert testified that the business was worth between approximately $17,000.00 and $27,300.00.
 {¶ 20} During trial, when Stumpff's counsel asked Hall what his professional opinion was with respect to the value of Mahaffey's, defense counsel lodged an objection in the following exchange:
 {¶ 21} "Mr. Kuczak: * * * do you have an opinion as to the fair market value of Mahaffey's Auto Salvage, Incorporated?
 {¶ 22} "Mr. Logan: We're going to object at this point, Your Honor, for the record. He said he was at the yard for a short time, looked over the cars, saw one transaction, never saw the books, never witnessed anything with regard to the books, one day out of all the years that Mahaffey's has been there.
 {¶ 23} "And we don't — we can't see for the record that he would qualify as an expert to make an opinion about the value when he has one comparable [business] which is Al's Auto Parts, which I have no idea if it has any reasonable relationship to Mahaffey's. Plus, he hasn't said how many auto parts places are in Dayton, which he said — again he said would be competition. And he has no reference point for making an expert opinion. We'd object.
 {¶ 24} "The Court: Your objections will go to the weight andnot the admissibility of it. It's overruled. You may answer thequestion."
 {¶ 25} In her written decision issued on November 24, 2004, the magistrate, however, made the following statement with respect to her ruling on Harris' objection to Hall's testimony at trial:
 {¶ 26} "Although the Court sustained the objection to Hall'sopinion of the fair market value of the business, the opinion was proffered that the value of Mahaffey's business alone, without the real estate, as of April 12, 2004 was $450,000, presuming that the business had a long term lease to stay in its current location."
 {¶ 27} The trial transcript indicates that Harris' objection to Hall's valuation testimony was not sustained, but rather, overruled, and Hall was allowed to testify concerning what he believed Mahaffey's was worth for purposes of a buy-out by one of the parties. Clearly, the magistrate did not initially exclude the testimony of Hall. She was free, however, to give Hall's testimony zero weight in contrast to the valuation testimony offered by Harris' expert, William Driver, C.P.A., when assessing the value of the business. We note that the magistrate concluded in her written decision that "Hall does not have any expertise in business evaluations using standard accounting methods."
 {¶ 28} The fact that the magistrate misstated in her written opinion that she sustained, rather than overruled, Harris' objection to Hall's testimony is harmless error. Despite the magistrate's mischaracterization of her ruling concerning the objection to Hall's testimony regarding the valuation of Mahaffey's, she affirmatively found that Hall was not qualified to express an opinion concerning the valuation of Mahaffey's.
 {¶ 29} Moreover, we find that the trial court committed harmless error when it repeated in its decision the magistrate's incorrect statement that she had sustained the objection to Hall's testimony. No prejudice resulted to the parties as a result of this incorrect statement. After conducting a de novo review of the magistrate's decision, the trial court determined that Hall was neither accepted nor qualified as an expert in the field of business valuation. Hall was only present at Mahaffey's for approximately two hours, and he only witnessed one auto part sold. Moreover, Hall based his appraisal value of Mahaffey's on the existence of a five to ten year lease of the land it is located upon. Hall's testimony ignored the fact that Harris owned the land separately from the business. After a thorough review of the record in the instant matter, we find that the trial court did not abuse its discretion when it held that Hall was not qualified to provide said expert valuation testimony and discounted his testimony on that basis.
 {¶ 30} Stumpff's first assignment of error is overruled.
 III {¶ 31} Stumpff's second assignment of error is as follows:
 {¶ 32} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY ORDERING DISSOLUTION CONTRARY TO ORC § 1701.91."
 {¶ 33} In his second assignment, Stumpff contends that the trial court erred when it ordered judicial dissolution pursuant to R.C. § 1701.91(A)(4) on the basis that both Harris and Stumpff were deadlocked with respect to the management of the business. Essentially, Stumpff asserts that there was no evidence presented at trial to support the magistrate's decision to order a dissolution under the R.C. § 1701.91(A)(4). We disagree.
 {¶ 34} R.C. § 1701.91(A)(4) states, in pertinent part, as follows:
 {¶ 35} "(A) A corporation may be dissolved judicially and its affairs wound up:
 {¶ 36} "(4) By an order of the court of common pleas of the county in this state in which the corporation has its principal office, in an action brought by one-half of the directors when there is an even number of directors or by the holders of shares entitling them to exercise one-half of the voting power, when it is established that the corporation has an even number of directors who are deadlocked in the management of the of the corporate affairs and the shareholders are unable to break the deadlock, or when it is established that the corporation has an uneven number of directors and that the shareholders are deadlocked in voting power and unable to agree upon or vote for the election of directors as successors to directors whose terms normally would expire upon the election of their successors. * * *"
 {¶ 37} Initially, it should be noted that Stumpff argues that judicial dissolution should not have been ordered because Harris failed to properly verify his request for dissolution pursuant to R.C. § 1701.91(B) which states in pertinent part:
 {¶ 38} "A complaint for judicial dissolution shall be verified by any of the complainants and shall set forth facts showing that the case is one of those specified in this section."
 {¶ 39} Stumpff did not raise this argument at any point before or during the trial before the magistrate. Instead, Stumpff attempted to advance this argument after the conclusion of the trial in a post-trial brief. Additionally, Stumpff attempts to argue for the first time on appeal that pursuant to R.C. § 1701.91(D), he was entitled to, but did not receive, notice that a hearing on a petition for judicial dissolution was to be held. Generally, errors that arise during the course of the proceedings and which are not brought to the attention of the trial court by objection, or otherwise, at the time they could be remedied, are waived and may not be reviewed on appeal. LeFortv. Century 21-Maitland Realty Co. (1987), 32 Ohio St.3d 121,123, 512 N.E.2d 1240. Thus, we agree with the trial court and find that Stumpff has waived these objections for the purposes of this appeal.
 {¶ 40} With respect to his request for judicial dissolution, Harris' makes the following averments in his counterclaim:
 {¶ 41} "25. Two (2) years ago, Plaintiff Stumpff said he needed `time off' and left the business for two (2) years.
 {¶ 42} "26. In 2002, Defendant-Counter claimant Harris ordered Plaintiff Stumpff to return to the business or sell his shares in the corporation back to the corporation or to Defendant-Counter claimant Harris, but Plaintiff Stumpff refused saying `Why would I come to work when you are paying me to stay away?
 {¶ 43} "27. Plaintiff Stumpff has taken $54,000.00 in salary without working and has fraudulently withdrawn $15,000.00 plus $1,000.00 in two checks from the corporate checking account without any authorization and for his own use, a total of $70,000.00 in two (2) years.
 {¶ 44} "28. Plaintiff Stumpff has been terminated as an employee of the corporation.
 {¶ 45} "29. The actions of Plaintiff Stumpff have almost bankrupted the corporation (Mahaffey's) and the corporation cannot continue with Plaintiff Stumpff and Defendant-Counter claimant Harris as shareholders."
 {¶ 46} In order to affirm the decision of the trial court ordering the judicial dissolution of Mahaffey's, Inc., it is necessary that one of the litigants demonstrate that the two directors and sole shareholders, Richard Harris and Kenneth Stumpff, are deadlocked in the management of the corporate affairs. Harris' counterclaim as well as the testimony offered at trial clearly establish that there are two directors and two fifty-percent shareholders in Mahaffey's, Inc., i.e. plaintiff-appellant Stumpff and defendant-appellee Harris. Harris requests that the corporation be dissolved, while Stumpff opposes the dissolution. Moreover, the testimony demonstrates that Harris and Stumpff are unable to work together. After discontinuing his salary when Stumpff failed to return to work after two years, Harris fired him from his position at Mahaffey's. Harris also barred Stumpff from entering the business premises. Stumpff unilaterally withdrew a substantial amount of funds from Mahaffey's corporate account after he was discharged, thus impairing the ability of the business to operate effectively. Contrary to Stumpff's assertions, it is abundantly clear that Harris and Stumpff were hopelessly deadlocked in the management of the corporate affairs. Thus, the trial court did not err when it affirmed the decision of the magistrate which ordered judicial dissolution pursuant to R.C. § 1701.91(D)(4).
 {¶ 47} Stumpff's second assignment of error is overruled.
 IV {¶ 48} Stumpff's third assignment of error is as follows:
 {¶ 49} "ASSUMING ARGUENDO THAT DISSOLUTION IS APPROPRIATE, THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY ORDERING DISSOLUTION WITHOUT A CONDITION THAT HARRIS OFFER ANY PROSPECTIVE PURCHASER OF MAHAFFEY'S ASSETS A REASONABLE OPPORTUNITY TO CONTINUE THE BUSINESS AT THE VALLEY STREET LOCATION."
 {¶ 50} In his third assignment, Stumpff contends that the trial court erred when it ordered judicial dissolution without conditioning Harris' sale of Mahaffey's assets on that he offer a long-term lease of the land on which the business is located to any prospective purchaser. In support of his assertion, Stumpff relies on R.C. § 1701.91(D) which states in pertinent part:
 {¶ 51} "* * * An order or judgment for the judicial dissolution of a corporation shall contain a concise statement of the proceedings leading up to the order or judgment; the name of the corporation; the place in this state where its principal office is located; the names and addresses of its directors and officers; the name and address of a statutory agent; and, if desired, such other provisions with respect to the judicialdissolution and winding up as are considered necessary ordesirable. * * *" (emphasis added).
 {¶ 52} Stumpff argues that requiring Harris to offer a long-term lease to a prospective purchaser would force him to discharge his fiduciary duty to obtain the best value for the assets of the company for both himself and Stumpff. Such a condition on the dissolution of Mahaffey's assets would also preclude Harris from breaching his fiduciary duty to Stumpff by usurping the opportunity of continuing the auto salvage operation for himself post-dissolution. In support of this assertion, Stumpff directs us to a bankruptcy case from Pennsylvania in which the court found that "although the president of a debtor corporation has the right to terminate [a] lease and evict the debtor, because the lease is valuable, the president is barred from terminating it because of the fiduciary duty which he owes the debtor corporation." In re Ardmore Sales Co., 18 B.R. 985, Bkrtcy. Pa., 1982.
 {¶ 53} In the instant case, both the magistrate and the trial court correctly note that a corporate dissolution by judicial decree pursuant to R.C. § 1701.91 is an order of liquidation, and there is no provision to fashion the remedy Stumpff requests. There is no dispute that Harris owns the property on which Mahaffey's is located. Once Mahaffey's is dissolved and its assets liquidated, Harris is free to occupy the subject property in any manner he sees fit. Harris cannot breach his fiduciary duty to an entity that no longer exists, and at no point in time has he attempted to evict Mahaffey's from the Valley Street address while it is still a going concern. Once the business is dissolved and liquidated, however, the trial court cannot force Harris to lease the property to anyone. Thus, we find that the trial court did not abuse its discretion when it declined to condition the dissolution of Mahaffey's on Harris offering a prospective purchaser of the business a long-term lease of the subject property.
 {¶ 54} Stumpff's third assignment of error is overruled.
 V {¶ 55} Stumpff's fourth assignment of error is as follows:
 {¶ 56} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY DETERMINING THAT STUMPFF HAD BREACHED HIS FIDUCIARY DUTY TO MAHAFFEY'S."
 {¶ 57} In his fourth assignment, Stumpff contends that the trial court erred when if found that Stumpff breached his fiduciary duty to Mahaffey's. Initially, Stumpff argues that because Harris filed his counterclaim on his own behalf, and not as a derivative claim on behalf of Mahaffey's, his claim against Stumpff is barred as a matter of law. In support of this assertion, Stumpff cites to the Ohio Supreme Court's holding inWeston v. Weston Paper Mfg. Co. (1996), 74 Ohio St.3d 377,658 N.E.2d 1058. However, the Court in Weston held that the plaintiffs, individual shareholders in a publicly traded entity, did not have a direct cause of action against the corporation. The Court went on to say that if the company had been a close corporation, then the plaintiffs could have maintained a direct cause of action against it. Id. Neither party disputes that Mahaffey's is close corporation, and that Harris and Stumpff are its only shareholders. Thus, the holding in Weston is inapplicable to the instant case, and Harris is not barred from bringing a direct cause of action against Stumpff for breach of fiduciary duty.
 {¶ 58} Next, Stumpff argues that his actions in failing to report to work for approximately two years and withdrawing $16,000.00 from Mahaffey's corporate account for his own personal use did not constitute a breach of fiduciary duty. We disagree.
 {¶ 59} "The ownership of a close corporation is limited to a small number of people who are dependent on each other for the enterprise to succeed." Crosby v. Beam (1989),47 Ohio St.3d 105, 548 N.E.2d 217. "The relationship between the shareholders must be one of trust, confidence and loyalty if the close corporation is to thrive." Id.
 {¶ 60} After Stumpff's wife passed away, Harris allowed him to take bereavement leave with the intention that he would return to work within a relatively short period of time. Instead, Stumpff did not return to work as expected, and continued to collect a salary and health benefits for two years. The magistrate found Harris' testimony that he repeatedly asked Stumpff to return to work to be credible. "On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts." State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212. The trial court agreed with the magistrate and found that Stumpff did not attempt to return to work, despite the opportunity to do so, and thereby breached his fiduciary duty to Harris and Mahaffey's as a matter of law.
 {¶ 61} Additionally, the magistrate found that Stumpff's withdrawal of $16,000.00 from Mahaffey's corporate account served no legitimate business purpose and was done only to personally benefit Stumpff. Again, the trial court agreed with the magistrate.
 {¶ 62} After a through review of the record, we find that the trial court did not abuse its discretion when it held that Stumpff breached his fiduciary duty to Harris and Mahaffey's when he performed the actions outlined above. The testimony offered at trial clearly demonstrates that Stumpff was involved in a series of self-dealing transactions that were an unequivocal breach of his fiduciary duty to Harris and Mahaffey's.
 {¶ 63} Stumpff's fourth assignment of error is overruled.
 VI {¶ 64} Stumpff's fifth assignment of error is as follows:
 {¶ 65} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FAILING TO FIND THAT HARRIS BREACHED HIS FIDUCIARY DUTY."
 {¶ 66} In his fifth assignment, Stumpff contends that the trial court abused its discretion when it failed to find that Harris breached his fiduciary duty when he unilaterally raised the rent paid by the corporation to himself for the lease for the premises. Additionally, Stumpff argues that Harris breached his fiduciary duty when he prohibited Stumpff from entering the business premises.
 {¶ 67} After a thorough review of the pleadings in this matter, we find that Stumpff's initial complaint does not contain a cause of action for breach of fiduciary duty concerning Harris' decision to increase the rent Mahaffey's paid to him for the use of the property. Moreover, there is no evidence in the record that the rent Harris charged for the property was excessive or unreasonable. Thus, we agree with the trial court that this issue is not properly before us, and we decline to address the merits of Stumpff's argument.
 {¶ 68} With respect to Stumpff's second assertion that Harris breached his fiduciary duty by prohibiting Stumpff from entering the business premises, we find that the trial court did not abuse its discretion when it found that Harris possessed valid reasons for forbidding Stumpff from entering the property. Although Harris' motion for a restraining order was ultimately denied by the magistrate, the trial court found that evidence adduced at trial clearly demonstrated that Stumpff threatened Harris after he was terminated from his position at Mahaffey's. The trial court further found, and we agree, that after Stumpff breached his fiduciary duty to Harris by failing to return to work for two years as well as withdrawing $16,000.00 from the corporate account for his personal use, Harris acted properly in barring him from the property.
 {¶ 69} Stumpff's fifth assignment of error is overruled.
 VII {¶ 70} Stumpff's sixth and final assignment of error is as follows:
 {¶ 71} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FAILING TO GRANT THE MOTION TO FILE AN AMENDED, SUPPLEMENTAL COMPLAINT."
 {¶ 72} In his final assignment, Stumpff contends that the trial court abused its discretion when it failed to grant his motion for leave to file an amended complaint alleging usurpation of corporate opportunities by Harris. In his motion which was filed during the pendency of the objections to the magistrate's decision, Stumpff argues that Harris bought a property across the street from Mahaffey's that was once used as an auto salvage yard. In its decision adopting the magistrate's decision or in any subsequent order, the trial court did not address Stumpff's motion to file an amended complaint.
 {¶ 73} As Stumpff correctly notes, it is presumed that a trial court overrules any pre-trial motion on which it has failed to rule prior to the commencement of the trial. State ex rel.The V. Cos. v. Marshall (1998), 81 Ohio St.3d 467,692 N.E.2d 198. A trial court's denial of a motion for leave to amend a complaint will not be reversed absent an abuse of discretion.State ex rel. Askew v. Goldhart (1996), 75 Ohio St.3d 608, 610,665 N.E.2d 200. An abuse of discretion connotes more than a mere error of law or judgment; it implies an attitude on the part of the trial court that is arbitrary, capricious, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
 {¶ 74} Based on the foregoing, it is clear that the trial court overruled Stumpff's motion for leave to file an amended complaint in failing to address said motion in its decision filed on December 6, 2005. We do not find the trial court's omission to be an abuse of discretion. Stumpff's motion for to file an amended complaint was filed subsequent to the issuance of the magistrate's decision as well as after Stumpff had filed his objections to her decision. Viewed in this light, the trial court did not abuse its discretion when it failed to grant Stumpff's untimely motion to amend the initial complaint.
 {¶ 75} Stumpff's sixth and final assignment of error is overruled.
 VIII {¶ 76} All of Stumpff's assignments of error having been overruled, the judgment of the trial court will be affirmed. While that judgment was a final, appealable order, Tilberry v.Body (1986), 24 Ohio St.3d 117, the only affirmative relief the judgment granted was an order of judicial dissolution of the corporation pursuant to R.C. 1701.91(D). The court made no findings concerning the value of the corporation or the parties' respective shares. Those issues were deferred to determination if and when a receiver is appointed, which on this record appears likely.
Grady, P.J. and Brogan, J., concur.