OPINION
{¶ 1} Respondent-appellant, Garnet Traxler (hereinafter "Garnet"), appeals the judgment of the Wyandot County Common Pleas Court adopting the magistrate's decision granting petitioner-appellee, Lisa A. Goldfuss (hereinafter "Lisa"), a civil stalking protection order. For the reasons that follow, we affirm.
 {¶ 2} On June 11, 2007, Lisa filed a petition for a Civil Stalking Protection Order ("SCPO") against Garnet pursuant to R.C. 2903.214(C)(1). In the petition, Lisa alleged that Garnet had followed her and her children home one day and passed her vehicle at a high rate of speed. (Nov. 28, 2007 Tr. at 7-9). Once Garnet had passed Lisa, Lisa alleged that Garnet stopped her vehicle, got out and "shook her fist at her and said something that [she] could not discern," then Garnet drove away. (Id. at 9-10); (Appellant's Brief at 1). The trial court granted an ex parte order of protection and set the matter for a hearing on the merits. However, because Lisa failed to appear on the date of the hearing, this petition was dismissed by the trial court.
 {¶ 3} On November 19, 2007, Lisa filed another petition for a SCPO against Garnet pursuant to R.C. 2903.214(C)(1). Lisa alleged that Garnet had made threats to her mother and sister while they were shopping with her children. (Petition for SCPO, Doc. No. 1). In addition, Lisa alleged that Garnet continued to follow her and her family. The trial court granted an ex parte protection order. *Page 3 
On November 28, 2007, a full hearing on the SCPO was held. On December 20, 2007, after reviewing the evidence presented at the hearing, the magistrate granted Lisa's SCPO petition as to Lisa, her husband, Charles, and her two children, Tyler and Emily. Garnet made a timely objection to the magistrate's decision to the Wyandot County Court of Common Pleas, but the trial court adopted the magistrate's decision.
 {¶ 4} Garnet now appeals and raises one assignment of error.
 ASSIGNMENT OF ERROR THE COURT ERRED BY GRANTING THE STALKING CIVIL PROTECTION ORDER BECAUSE ONE OF THE NECESSARY INCIDENTS REQUIRED TO PROVE A PATTERN OF CONDUCT WAS BARRED BY THE DOCTRINE OF RES JUDICATA.
 {¶ 5} Before deciding the merits of Garnet's arguments, we note that Lisa failed to file a brief with this Court. In this situation, App. R. 18(C) states: "in determining the appeal, the Court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." We, therefore, accept Garnet's statement of the facts and issues as correct. Nonetheless, we are not persuaded that Garnet's brief reasonably appears to sustain a reversal.
 {¶ 6} In Garnet's assignment of error, she argues that the second SCPO should not have been granted because the event that was the basis for the June 11, *Page 4 
2007 SCPO petition was barred by res judicata. Garnet argues that because the first SCPO was dismissed, it could not have been used to prove the necessary "pattern of conduct" element in Lisa's second SCPO. Therefore, Garnet claims that the trial court erred in adopting the magistrate's decision that granted the second SCPO.
 {¶ 7} The trial court may adopt, reject, or modify the magistrate's decision. Civ. R. 53(D)(4)(b). When ruling on objections to the magistrate's decision, the trial court is "not required to follow or accept the findings or recommendations of its magistrate." Stumpff v.Harris, 2d Dist. No. 21407, 2006-Ohio-4796, ¶ 16, citations omitted. Instead, the trial court "shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Civ. R. 53(D)(4)(d); Stumpff, 2006-Ohio-4796, at ¶ 16. Accordingly, the trial court reviews the magistrate's decision under a de novo standard of review. Stumpff, 2006-Ohio-4796, at ¶ 16.
 {¶ 8} This Court reviews a trial court's decision to grant a civil protection order under an abuse of discretion standard of review.Jenkins v. Douglas, 3d Dist. No. 9-06-55, 2007-Ohio-1909, ¶¶ 7-9;Kramer v. Kramer, 3d Dist. No. 13-02-03, 2002-Ohio-4383, ¶ 11. An abuse of discretion suggests the trial court's *Page 5 
decision is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 9} The issuance of a civil stalking protection order is governed by R.C. 2903.214. Under this section, a person may seek civil relief for themselves, or on behalf of a family member, against an alleged stalker by filing a petition that alleges "that the respondent engaged in a violation of section 2903.211 of the Revised Code against the person to be protected by the protection order." R.C. 2903.214(C)(1). R.C. 2903.211, Ohio's menacing by stalking statute, states that "[n]o person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." R.C. 2903.211(A)(1). A pattern of conduct is defined as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C. 2903.211(D)(1). Thus, there must be more than one incident to establish a "pattern of conduct" and obtain a SCPO. Jenkins, 2007-Ohio-1909, at¶ 9.
 {¶ 10} Garnet claims that because Lisa's first SCPO was dismissed, under the doctrine of res judicata Lisa could not rely on those events to establish a "pattern of conduct" in her second SCPO. Garnet relies heavily on the case Bumgardner v. Bumgardner, 12th Dist. No. CA2004-07-172, 2005-Ohio-3445, in *Page 6 
support of her position that the event under the first SCPO was res judicata. We find Garnet's argument unpersuasive.
 {¶ 11} Generally, an existing final judgment between the parties in litigation is conclusive against the same parties as to all claims which were or might have been litigated in the first lawsuit. Natl.Amusements, Inc. v. Springdale (1990), 53 Ohio St.3d 60, 62,558 N.E.2d 1178. Specifically, under the doctrine of res judicata, "`[w]hen a valid and final judgment rendered in an action extinguishes the plaintiff's claim * * *, the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'" Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, 382,653 N.E.2d 226, quoting 1 Restatement of the Law 2d, Judgments (1982) 196, Section 24(1).
 {¶ 12} Garnet alleges in her brief that the first SCPO was dismissed with prejudice. (Appellant's Brief at 1). The record indicates that the first SCPO was dismissed for failure to appear and prosecute and not after a hearing on the merits. (JE Affirming Mag. Dec., Doc. No. 13 at 1). Nevertheless, the issue of the dismissed SCPO is not dispositive since there is sufficient evidence in the record that indicates that separate criminal charges were filed against Garnet for the June 9, 2007 incident, and that a conviction resulted from those charges. *Page 7 
 {¶ 13} R.C. 2903.211(D)(1) clearly states that a pattern of conduct, for purposes of obtaining a SCPO, is defined as: "two or more actions or incidents closely related in time, whether or not there has been a priorconviction based on any of those actions or incidents." (Emphasis added). Thus, R.C. 2903.211(D)(1) allows evidence of an action that did result in a conviction for purposes of establishing the respondent engaged in a pattern of conduct. Here, the purpose of using the June 9, 2007 event was to establish a pattern of conduct, not to re-litigate the incident. (Nov. 28, 2007 Tr. at 8). There was also sufficient evidence presented to establish that Garnet's actions on June 9th resulted in a conviction.
 {¶ 14} At the trial on November 28, 2007, Lisa testified that the problems with Garnet started on June 9, 2007. (Nov. 28, 2007 Tr. at 9). On that day, Lisa stated that while driving home from her parents' house with her children in her car, the following occurred:
 Uhm, I was on my way home and, uhm, Garnet approached, uhm, very quickly in my rear view mirror and I saw her, uhm, prepare to pass me at the top of a hill. And I immediately hit my brakes and she — she then came right into my — into my path and I laid on my horn at that point and she proceeded to go down a few — I'd say probably 50 feet — stopped her car, got out, shook her finger and started lunging at me. And, uhm, then proceeded to get back into her car and then crawl on down and then turn to go to her rental property.
(Id.). In addition to filing a SCPO, which was dismissed, a criminal charge of menacing was brought against Garnet, for which she ultimately pled guilty to a *Page 8 
charge of disorderly conduct. (Id. at 11, 16-17). Lisa also introduced, and Garnet stipulated to, the disorderly conduct conviction from the Wyandot County Municipal Court. (Id. at 11)(Petitioner's Ex. 1). Even Garnet admitted to passing Lisa at a high rate of speed on June 9, 2007, but denied getting out of her car and lunging at Lisa. (Nov. 28, 2007 Tr. at 73-74). Garnet also acknowledged that she had been charged with menacing in response to the June 9th incident. (Id. at 74-75). Moreover, Garnet testified that she eventually pled guilty to a charge of disorderly conduct upon the advice of her attorney who told her that the case could go to a jury trial. (Id. at 74-75, 80).
 {¶ 15} Just because there had been a prior conviction based on the June incident, which Lisa could not have solely relied on to obtain her second SCPO, this does not mean that granting the second SCPO was improper. We find, after a review of the record, that there was evidence of other conduct by Garnet relating to events after the June incident upon which the magistrate relied in granting the SCPO. Moore v.Moore, 9th Dist. No. 02CA0071, 2003-Ohio-3789, ¶¶ 5-7 (finding that the doctrine of res judicata was inapplicable when petitioner relied on events subsequent to the event that had been dismissed under a prior CPO petition).
 {¶ 16} Lisa testified that on October 14, 2007, while attending church with her husband and children, Garnet circled the church waiting for them to leave, and *Page 9 
then, when they arrived at their house, Garnet was there and circled their house. (Nov. 28, 2007 Tr. at 12-13). Lisa testified that on October 17, 2007, she took her son for a ride in the combine and then took a load of corn to the elevator, but on her way back out of town, she noticed Garnet following her back to her house. (Id. at 13-14). In addition, there was also an incident with Lisa's children and her mother and sister on October 19, 2007. (Id. at 14). Overall, based on the events between June and October 2007, Lisa stated that she wanted a SCPO, "[f]or the safety of — of myself and for my children — or actually my entire family, because I know what she can be capable of based on the incident over the summer where I felt like I was almost run off the road." (Id. at 16).
 {¶ 17} Lisa's mother, Julianne Pelter, also testified that on October 19, 2007 Garnet followed her, her other daughter, Jana, and Lisa's children to Bucyrus. (Id. at 33). At one point, Julianne testified, Garnet got so close to her vehicle that she could hear Garnet yell, "I'll get you" over and over again. (Id. at 34). Julianne stated that she was "always nervous" whenever Garnet was around. (Id. at 39).
 {¶ 18} In addition, Lisa's sister, Jana Pelter, further testified regarding the events that had taken place on October 19, 2007. Jana testified that her mother, father, Lisa's children, and she were on their way to Bucyrus when they were followed at different points in their trip by Garnet. (Id. at 49-50). In addition, she *Page 10 
stated that while Lisa's children and she were waiting in the van for her mother to finish grocery shopping, Garnet appeared in front of their van. (Id. at 51). According to Jana, Garnet was no more than two feet away from the van when she started yelling and shaking her fists at them. (Id.). Jana testified that she heard Garnet yell, "I'm gonna get you," but was not sure exactly which members in the van Garnet was directing her comment towards. (Id.). Jana stated that she was concerned for her safety and for the safety of Lisa's children during this encounter. (Id. at 52).
 {¶ 19} Finally, Lisa's husband, Charles Goldfuss, testified in more detail about the incident at their church on October 14, 2007. He stated that while he and his family were waiting for Lisa's mother and father to leave the church, he noticed Garnet circled the church three or four times, and when his family got back into town, Garnet was waiting for them at one of the street corners. (Id. at 96-98). Moreover, he testified that he believed Garnet presented a danger to him and his family, which was why his entire family was seeking a SCPO. (Id. at 100).
 {¶ 20} Garnet admitted that she has a habit of driving around town, and that she has to pass Lisa's house in order to go to work and to Upper Sandusky. (Id. at 64-65). As to the incident at the church, Garnet stated that she usually goes over to that area to "go to the cemetery and see her brother." (Id. at 86). Garnet could *Page 11 
not recall following Lisa and her son back from the elevator, but testified that she was "always in town running around." (Id. at 87). In addition, as to the incident in the grocery store parking lot, Garnet stated that after driving through town a couple of times, she drove to the grocery store. (Id. at 75-76). When she arrived at the store, Garnet testified:
 I got out of my car and just kind of walked around to the front of it. And I wasn't paying a whole lot of attention because I kind of had my head down. And I looked up to see if there was any cars backing out or anything, and I went beside of it and seen Jana setting [sic] in the car and I walk on by.
(Id. at 76-77). Garnet testified that she never confronted any of Lisa's family members or made any threats to any of them, although she admitted seeing Lisa's mother in the store while she was shopping. (Id. at 87-88). Ultimately, Garnet claimed that she was actually being stalked by Lisa and her family and introduced pictures of Lisa's family purportedly following her. (Id. at 66-73); (Respondent's Ex. A).
 {¶ 21} Based on the above evidence, the magistrate made the following conclusions:
 Respondent [Garnet] is well aware that her actions of driving by Petitioner's [Lisa's] residence and being behind Petitioner at times is causing Petitioner mental distress. This is evident in the numerous Petitions that have been filed by Petitioner and her family. Knowing that Petitioner is fearful of Respondent, Respondent continues to drive by Petitioner's residence, to approach *Page 12 Petitioner and her family when out in public. Respondent does nothing to try to alleviate the stress between Petitioner and Respondent.
(Mag. Dec., Doc. No. 4 at 6). Then the magistrate issued the SCPO against Garnet as to Lisa, Lisa's husband, and Lisa's children. (Id.). The trial court adopted the magistrate's decision after rejecting Garnet's position that the event under the first SCPO had been barred by res judicata. (JE Affirming Mag. Dec., Doc. No. 13).
 {¶ 22} Based on the evidence above, we believe that there was sufficient evidence presented, relating to events after the June incident, for the magistrate to find that Garnet, while engaging in a pattern of conduct, knowingly caused Lisa and her family to believe she would cause them physical harm or cause them mental distress. While Garnet denied ever threatening Lisa or her family, there was evidence that she drove by their home and circled their block on more than one occasion. Additionally, there was evidence that she followed Lisa or members of her family at different times. Moreover, there was evidence that Garnet had verbally threatened Lisa or her family on at least two occasions, and that a prior SCPO had been requested based on Garnet's conduct. Thus, we are unable to find that issuing a SCPO pursuant to R.C. 2903.211 and 2903.214 was unreasonable with regard to Lisa and her family.
 {¶ 23} Furthermore, we find the case Garnet relies on for support to be distinguishable. In Bumgardner, the petitioner filed a petition for a CPO against *Page 13 
respondent, which was dismissed by the trial court for lack of evidence. 2005-Ohio-3445, at ¶ 2. A few months later, the petitioner filed a petition for a second CPO asserting new allegations and repeating the old allegations from the first petition. Id. at ¶ 3. After a hearing, the trial court dismissed her second petition on the basis that her claims had been barred by res judicata. Id. at ¶ 4. On appeal, the Court of Appeals for the 12th District affirmed the trial court's decision and held:
 After reviewing the record, we find that the domestic relations court properly dismissed appellant's petition based on res judicata. Appellant's second petition does allege some facts concerning events that occurred subsequent to the dismissal of her first petition. However, at the final hearing on the second petition, appellant reiterated the allegations made in support of her first petition. Appellant's counsel called witnesses to testify about events that allegedly occurred prior to the first petition. Even when questioned about the new facts alleged in her second petition, appellant referred back to her original allegations.
Id. at ¶ 13.
 {¶ 24} This case is distinguishable from Bumgardner where the petitioner seemingly had other reasons than the prior dismissed petition in requesting another CPO, but really only testified to the prior event. See id. Here, Lisa's second petition did allege facts concerning events that occurred subsequent to the dismissal of her first petition. (Petition for SCPO, Doc. No. 1). In addition, the event that had been the basis for the first dismissed petition resulted in a criminal conviction from a separate proceeding. Moreover, while Lisa did testify regarding *Page 14 
the event that was the basis for her first petition, Lisa's testimony, along with the testimony of her other witnesses, indicates that there were also subsequent events that gave rise to a second SCPO. Furthermore, the magistrate's conclusions clearly indicate that it relied on those subsequent events in granting the SCPO against Garnet.
 {¶ 25} Therefore we find the case cited by Garnet to be distinguishable and the doctrine of res judicata inapplicable in this case.
 {¶ 26} Garnet finally argues that there was insufficient evidence to demonstrate that Lisa suffered mental distress. Again, R.C. 2903.211(A)(1) states that "[n]o person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." Garnet cites R.C. 2903.211(D)(2)'s definition for mental distress, which states that mental distress includes the following:
 (a) Any mental illness or condition that involves some temporary substantial incapacity;
 (b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.
R.C. 2903.211(D)(2)(a), (b). Garnet claims that the record is devoid of any evidence that Lisa suffered mental distress to the level required under the statute. *Page 15 
 {¶ 27} After reviewing all of the evidence, the magistrate made the following findings:
 Respondent [Garnet] is well aware that her actions of driving by Petitioner's [Lisa's] residence and being behind Petitioner at time is causing Petitioner mental distress. This is evident in the numerous Petitions that have been filed by Petitioner and her family. Knowing that Petitioner is fearful of Respondent, Respondent continues to drive by Petitioner's residence, to approach Petitioner and her family when out in public. Respondent does nothing to try to alleviate the stress between Petitioner and Respondent.
(Mag. Dec., Doc. No. 4 at 6). We believe there is sufficient evidence in the record to support the magistrate's conclusion.
 {¶ 28} Therefore, we hold that the trial court did not err in adopting the magistrate's decision in issuing a SCPO against Garnet. Although we have relied upon additional grounds not relied upon by the trial court to find that the SCPO was appropriate, "[a] judgment by the trial court which is correct, but for a different reason, will be affirmed on appeal as there is no prejudice to the appellant." Bonner v. Bonner, 3d Dist. No. 14-05-26, 2005-Ohio-6173, ¶ 18, citing Lust v. Lust, 3d Dist. No. 16-02-04, 2002-Ohio-3629, ¶ 32, citing Smith v. Flesher (1967),12 Ohio St.2d 107, 110, 233 N.E.2d 137.
 {¶ 29} Garnet's assignment of error is, therefore, overruled. *Page 16 
 {¶ 30} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 WILLAMOWSKI and ROGERS, JJ., concur. *Page 1