[Cite as *Tewalt v. Peacock*, 2011-Ohio-1726.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### SHELBY COUNTY

JOHN ALVA TEWALT, JR.,

    PLAINTIFF-APPELLEE,               CASE NO.  17-10-18

    v.

KERRY PEACOCK,                    O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Shelby County Common Pleas Court
Juvenile Division
Trial Court No. 2009-PAT-0012

Judgment Affirmed

Date of Decision:   April 11, 2011

APPEARANCES:

    *Kimberly S. Kislig*  for Appellant

    *Thomas J. Buecker*  for Appellee

**ROGERS, P.J.**

{¶1} Defendant-Appellant, Kerry Peacock, appeals the judgment of the Court of Common Pleas of Shelby County, Juvenile Division, resulting from a paternity action. Specifically, Peacock objects to the trial court's decision granting Plaintiff-Appellee's, John Tewalt, Jr., request that the visitation exchange location ("exchange point") recited in the Magistrate's Decision, be changed from Anna's Police Department to Sidney's Police Department. On appeal, Peacock argues that the trial court erred by failing to treat Tewalt's motion to correct a clerical error as an objection to the Magistrate's Decision; by not requiring Tewalt to provide a hearing transcript; by reviewing a DVD recording of the final hearing; by considering Peacock's closing arguments; by changing the exchange point, as it was against the manifest weight of the evidence; and, by ordering a new exchange point, as it was not in the best interests of the parties' minor child. Based upon the following, we affirm the judgment of the trial court.

{¶2} In December 2008, Tewalt and Peacock, who never married, had one child together, Rylee Tewalt ("Child").

{¶3} In August 2009, Tewalt filed a complaint for paternity alleging that he was the Child's natural father. In his complaint, Tewalt also requested "an order granting him care, custody, and control, and/or visitation with the child," as well as an order of support.

{¶4} In November 2009, the parties filed an agreed entry detailing, *inter alia*, a visitation schedule, child support payments, and that the Anna Police Department would be the exchange point. The Magistrate accepted the agreed entry as a temporary order until the trial court issued its final judgment.

{¶5} In January 2010, Tewalt filed a proposed shared parenting plan. The plan detailed, *inter alia*, the parents' custodial rights, visitation, residential parent status, and child support. The proposed plan did not, however, set forth an exchange point.

{¶6} The case proceeded to a final hearing on April 28, 2010. During a portion of the hearing the Magistrate failed to switch on the recording device. As a result roughly an hour of testimony was not recorded. To resolve the issue, the parties agreed to continue the hearing on May 17, 2010, and have those who testified during the unrecorded portion testify again. The following testimony, pertinent to the exchange point, was heard:

> **Tewalt's Trial Counsel: If the exchange occurred at McDonald's in Sidney and/or Piqua, would that be more convenient?**
>
> **Tewalt: Yes, it would.**
>
> **\* \* \***
>
> **Peacock's Trial Counsel: You indicated that the exchanges take place at the Sidney Police Department currently, isn't it true that they take place at the Anna Police Department?**
>
> **Tewalt: Well, in Anna, yes, sir, yes, ma'am, I mean.**

\* \* \*

**Peacock's Trial Counsel: Would you be willing to have the exchanges at the Sidney Police Department?**

**Tewalt: Yes, ma'am, that would be fine.**

\* \* \*

**Peacock's Trial Counsel: What would you ask the Court to find for an exchange point?**

**Peacock: The Sidney Police Department would seem adequate.**

\*\*\*

**Peacock's Trial Counsel: You've indicated that the temporary agreed visitation is working out, would you request that the Court continue that as a permanent order?**

**Peacock: Yes.**

May 17, 2010, Hearing Tr., p. 19, 38-39. At no point during the hearing did Peacock explicitly request that the Anna Police Department remain the exchange point.

{¶7} In his closing arguments, Tewalt stated that he was willing to meet Peacock at the Sidney Police Department or McDonald's. In Peacock's closing arguments she stated that "Sidney is halfway in the middle so that does seem (sic) a good meeting point." Peacock also requested that the temporary order, agreed upon by both parties, and filed with the trial court in November 2009, become a permanent order.

**{¶8}** The Magistrate's Decision was filed with the trial court in May 2010. With regard to the exchange point, the Magistrate stated:

> **The issue of visitation exchange is contested as Kerry would prefer the exchange to occur at the Anna Police Department and John would prefer that the exchange occur in Sidney at McDonalds (sic). Local Rule 22 requires the visiting parent to "pick up the children and return the children." Accordingly, the Magistrate will require the parties to make the exchange at the Anna Police Department for so long as Kerry resides in the Village of Anna.**

(Doc. No. 49).

**{¶9}** On June 4, 2010, Tewalt filed a motion to correct a clerical error in the Magistrate's Decision. Specifically, Tewalt contended that the exchange point should have been Sidney instead of Anna. In support of his motion, Tewalt stated that during the hearing, both parties acknowledged that Sidney was an agreeable exchange point.

**{¶10}** On July 21, 2010, the trial court held a hearing on the sole issue of the exchange point. The trial court reviewed a DVD, which contained a recording of the May 17, 2010 hearing. The trial court conducted this review in the presence of the parties' counsel. Specifically, the trial court reviewed Peacock's direct examination. At no time did Peacock object to the trial court's use and consideration of the DVD. The trial court also heard the following live testimony:

> **Peacock's Trial Counsel: The testimony in the prior hearing where you indicated that the Sidney Police Department was an**

**adequate location, were you agreeing that the Sidney Police Department…**

**(Objection made, but overruled)**

**Peacock: Okay, I was under the impression that if the Magistrate would order the visitation pickup to be in Sidney, I would rather have it at the Police Department, then (sic) McDonald's.**

**\* \* \***

**Tewalt's Trial Counsel: And you don't ever remember negotiating or talking to your attorney about agreeing to exchange in Sidney?**

**Peacock: No.**

**\* \* \***

**Tewalt's Trial Counsel: John were you present at the hearing in April?**

**Tewalt: Yes, I was.**

**Tewalt's Trial Counsel: At that time do you remember negotiating an exchange location for - -**

**Tewalt: - - Yes.**

**Tewalt's Trial Counsel: What do you remember?**

**Tewalt: Well we'd, I said McDonalds (sic) and then you asked that wasn't really an appropriate area and then you said something about Sidney Police Department and I said that would work for me as well.**

**Tewalt's Trial Counsel: Do you remember Kerry agreeing to that?**

**Tewalt: Yes, she did.**

> **Tewalt's Trial Counsel: That was the record that was unfortunately not recorded by the Magistrate?**
>
> **Tewalt: Yes, it was.**

July 21, 2010, Hearing Tr., p. 10, 13, 15.

{¶11} Ultimately, the trial court found that the exchange point was never contested, stating in pertinent part:

> **The evidence received by this Court includes a review of Defendant's direct examination testimony of May 17, 2010 and the live testimony of Plaintiff and Defendant. Also of consideration are the arguments of counsel at this hearing as well as those made at the conclusion of the May 17, 2010 hearing.**
>
> **From its review of the May 17, 2010 hearing, the Court finds the following exchange (between Defendant and her attorney) relevant:**
>
> **(By K. Kislig to Defendant)**
>
> **Q.   "What would you ask the Court to find for an exchange point (sic)."**
> **A.   "Sidney Police Department would seem adequate."**
>
> **\* \***
> **Also relative to this issue is the statement by attorney Kislig to the Magistrate (at the May 17, 2010 hearing) regarding this issue wherein attorney Kislig \* \* \* advised the Magistrate that Sidney is "half way, in the middle" and "a good meeting point."**
>
> **It is clear to this Court that an exchange location for visitation was never in controversy until the present. The Defendant as well as her counsel, reported to the Magistrate that Sidney was a good middle point for a safe and proper exchange to take place.**

(Doc. No. 62).

**{¶12}** In August 2010, an order/entry was filed adopting the Magistrate's Decision, wherein the Sidney Police Department was listed as the exchange point. Shortly thereafter, Peacock filed a notice of appeal with this Court, as well as the transcripts of the April, May, and July hearings.

**{¶13}** It is from this judgment that Peacock appeals, presenting the following assignments of error for our review.

### *Assignment of Error No. I*

**THE PLAINTIFF-APPELLEE'S MOTION TO CORRECT ERROR SET FORTH IN THE MAGISTRATE'S DECISION AND ORDER FILED WITH THE COURT ON APRIL 8, 2010 ("MOTION TO CORRECT ERROR") WAS NOT ACTUALLY A REQUEST TO CORRECT A "CLERICAL ERROR" AS INDICATED WITHIN THE MOTION TO CORRECT ERROR BUT RATHER WAS A POORLY DISGUISED OBJECTION TO THE MAGISTRATE'S DECISION AND WAS USED AS A MEANS TO CIRCUMVENT THE PROPER OBJECTION PROCESS (AND COST). ACCORDINGLY, THE PLAINTIFF-APPELLEE SHOULD BE REQUIRED TO REIMBURSE DEFEDNANT-APPELLANT'S COSTS FOR PREPARATION OF THE HEARING TRANSCRIPT.**

### *Assignment of Error No. II*

**THE TRIAL COURT ERRED WHEN IT CONSIDERED THE MOTION TO CORRECT AS AN OBJECTION TO THE MAGISTRATE'S DECISION FILED MAY 21, 2010, ("MAGISTRATE'S DECISION") WITHOUT REQUIRING PLIANTIFF-APPELLEE TO PROVIDE A TRANSCRIPT OF**

**THE FINAL HEARING UPON WHICH THE MAGISTRATE'S DECISION WAS BASED.**

*Assignment of Error No. III*

**THE TRIAL COURT ERRED WHEN IT "REVIEWED A PORTION OF THE TRIAL DVD" ("DVD REVIEW") AS "ADDITIONAL EVIDENCE" FOR THE PLAINTIFF-APPELLEE'S "OBJECTION" AS INDICATED IN ITS ORDER/ENTRY FILED JULY 21, 2010 ("EXCHANGE LOCATION ENTRY") BECAUSE SUCH DVD REVIEW DOES NOT CONSTITUTE "ADDITIONAL EVIDENCE" AS SUCH EVIDENCE COULD, WITH REASONABLE DILIGENCE, HAVE BEEN PRODUCED BY THE FATHER FOR CONSIDERATION BY THE MAGISTRATE.**

*Assignment of Error No. IV*

**THE TRIAL COURT ERRED WHEN IT USED STATEMENTS MADE BY DEFENDANT-APPELLANT'S COUNSEL IN HER CLOSING STATEMENT AS "ADDITIONAL EVIDENCE" BECAUSE STATEMENTS BY COUNSEL ARE NOT EVIDENCE.**

*Assignment of Error No. V*

**THE TRIAL COURT ERRED IN ITS EXCHANGE LOCATION ENTRY WHEN IT HELD THAT THE "EXCHANGE LOCATION FOR VISITATION WAS NEVER IN CONTROVERSY" BASED UPON AN AGREEMENT BETWEEN THE PARTIES BECAUSE SUCH HOLDING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

*Assignment of Error No. VI*

**THE TRIAL COURT ERRED WHEN IT ORDERED THAT THE EXCHANGE LOCATION OCCUR AT THE SIDNEY POLICE DEPARTMENT, INSTEAD OF THE ANNA POLICE DEPARTMENT, BECAUSE SUCH EXCHANGE LOCATION**

**IS NOT IN THE BEST INTERESTS OF THE PARTIES' MINOR CHILD.**

**{¶14}** Due to the nature of Peacock's assignments of error, we elect to address her first, second, and third assignments of error together, and her fourth and fifth assignments of error together.

*Assignments of Error Nos. I, II, and III*

**{¶15}** In her first, second, and third assignments of error, Peacock contends that Tewalt's motion to correct a clerical error was in fact an objection to the Magistrate's Decision. As a result, Peacock contends that Tewalt should have been required to file the transcripts with the trial court and pay the costs. Additionally, Peacock contends that the trial court erred in reviewing the DVD because it was not additional evidence. We disagree.

**{¶16}** Civ.R. 60(A) governs the correction of clerical mistakes within court documents, and states in pertinent part:

> **Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court order.**

**{¶17}** "Civ.R. 60(A) permits a trial court, in its discretion, to correct clerical mistakes which are apparent on the record, but does not authorize a trial court to make substantive changes in judgments. * * * The term 'clerical mistake'

refers to a mistake or omission, mechanical in nature and apparent on the record which does not involve a legal decision or judgment." *Blust v. Lamar Advertising of Mobile, Inc.,* 183 Ohio App.3d 478, 2009-Ohio-3947, at ¶20, quoting *State ex rel. Litty v. Leskovyansky* (1996), 77 Ohio St.3d 97, 100, superseded by rule on other grounds.

{¶18} The distinction between clerical mistakes that can be corrected and those that cannot was aptly set forth by the Ninth District Court of Appeals, writing:

> **The basic distinction between clerical mistakes that can be corrected under Civ.R. 60(A) and substantive mistakes that cannot be corrected is that the former consists of 'blunders in execution' whereas the latter consists of instances where the court changes its mind, either because it made a legal or factual mistake in making its original determination, or because, on second thought, it has decided to exercise its discretion in a different manner.**

*Londrico v. Delores C. Knowlton, Inc.* (1993), 88 Ohio App.3d 282, 285.

{¶19} Civ.R. 60(A) is not an appropriate means for the type of correction Tewalt sought. We find that the true purpose of Tewalt's motion was to challenge the Magistrate's Decision regarding the exchange point, not correct a transcriptional error. The record contains no evidence that the Magistrate intended Sidney be the exchange point or mistakenly listed Anna as the exchange point. Moreover, the record contains no evidence that the parties agreed that Sidney

would be the exchange point. Accordingly, the correction Tewalt sought cannot be fairly characterized as a "mechanical" correction that does not involve a legal decision or judgment. Civ.R. 60(A). In light of the foregoing, we find that Tewalt's motion to correct a clerical error (hereinafter "objection") was in fact an objection to the Magistrate's Decision.

{¶20} Objections to a Magistrate's decision must meet the requirements set forth in Civ.R. 53(D)(3)(b). Generally, an objecting party must meet three requirements in order to properly file its objections, to wit: timeliness, specificity, and filing transcripts.[1] The issue before this Court is whether the trial court erred in considering Tewalt's objection in spite of his failure to file transcripts.

{¶21} Pursuant to Civ.R. 53(D)(3)(b)(iii), a party objecting to a Magistrate's decision must file transcripts of all the evidence presented to the Magistrate. The rule states:

> **An objection to a factual finding * * * shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available. * * * The objecting party *shall* file the transcript or affidavit with the court within thirty days after filing objections unless the court extends the time in writing for preparation of the transcript or other good cause. If a party files timely objections prior to the date on which a transcript is prepared, the party may seek leave of court to supplement the objections.**

---

[1] Although not raised on appeal, we note that Tewalt did file the motion/objection within fourteen days after the Magistrate filed its decision. Civ.R. 53(D)(3)(b)(i). We also note that Tewalt's objection sufficiently stated the grounds for the objection. Civ.R. 53(D)(3)(b)(ii).

Civ.R. 53(D)(3)(b)(iii).

{¶22} Tewalt never filed transcripts with the trial court. Peacock contends that due to Tewalt's failure, the trial court erred in considering Tewalt's objection. In support of her contention, Peacock cites *Pagonis v. Steele*, 9th Dist. No. 25189, 2010-Ohio-4459. In *Pagonis*, a father filed objections to the Magistrate's decision, but failed to file the accompanying transcripts. The trial court overruled the father's objection on the basis that it had not been provided with the transcripts. The appellate court, finding in favor of the trial court, found that without the transcripts the trial court could not have adequately reviewed the judgment for which the objection was filed. Accordingly, it was proper for the trial court to overrule the father's objection.

{¶23} We find that the case at bar is distinguishable from *Pagonis*. In *Pagonis*, the trial court, within its discretion, chose to overrule the father's objections due to his failure to file the transcripts. Civ.R. 53(D)(4)(b). Like the father in *Pagonis*, Tewalt failed to file the transcripts, and thus the trial court could have overruled his objections. However, unlike the trial court in *Pagonis,* the trial court here obtained a DVD of the May hearing. We find that the DVD was an alternative form of the transcript, thus satisfying the transcript requirement. Civ.R. 53(D)(3)(b)(iii). In reaching this finding two issues must be addressed.

**{¶24}** First, can the filing of a DVD, which contains a recording of the hearing before the Magistrate, satisfy the transcript requirement set forth in Civ.R. 53(D)? In response to this issue, we find in the affirmative. Civ.R. 53(D)(b)(3)(iii) in pertinent part states, "With leave of court, alternative technology or manner of reviewing the relevant evidence may be considered." Although the DVD is not in the record, it appears, based upon the trial court's description of the DVD's contents, that it contained the same testimony that would have appeared in the transcript, had it been filed. Accordingly, the DVD, in the case at bar, is an acceptable form of "alternative technology," as defined in Civ.R. 53(D).

**{¶25}** The second issue, to some degree, is born from the first issue. Within the portion of Civ.R. 53(D) concerning alternative technology, appears the phrase, "with leave of court." Tewalt neither filed a motion nor otherwise requested leave of court to file a transcript or alternative technology in lieu of the transcript. Accordingly, it would appear as though the trial court's use of the DVD was improper, which leads us to the second issue. Is it within the trial court's discretion, in light of an objecting party's failure to file the transcript, to *sua sponte* obtain and consider the transcript or alternative technology? The record does not reveal how the trial court obtained the DVD. Regardless of how the trial court obtained the DVD, the fact remains that it did so outside of the

-14-

procedures set forth in Civ.R. 53(D). While this may seem improper, we must bear in mind the latitude given to the trial court in reviewing a Magistrate's decision.

{¶26} Civ.R. 53(D)(4)(b) governing the trial court's review of a Magistrate's decision states:

> **Whether or not objections are timely filed, a court may adopt or reject a magistrate's decision in whole or in part, with or without modification. A court may hear a previously-referred matter, take additional evidence, or return a matter to a magistrate.**

Even though we view the DVD as a substitute for the transcript, and thus outside the meaning of "additional evidence," we find that the latitude afforded to the trial court in this provision is demonstrative of the great latitude of discretion afforded to the trial court when reviewing a Magistrate's decision. There is nothing in Civ.R. 53, which prohibits or otherwise limits the trial court's ability to *sua sponte* obtain and consider the transcript or alternative technology. Accordingly, we find that the trial court's consideration of the DVD cured Tewalt's failure to file the

transcript, and was a proper exercise of its discretion.[2]

{¶27} Even if we were to find that the trial court erred in considering the DVD, the error would not have been prejudicial to Peacock. First, use of the DVD to review testimony heard by the Magistrate was not prejudicial. The trial court indicated that the DVD depicted the May 17, 2010 hearing. Accordingly, we find that the DVD and the transcript, had it been properly filed, would have contained the same testimony. Second, the DVD was reviewed by the trial court in the presence of the parties' counsel. Peacock, however, did not object to the trial court's use and consideration of the DVD. Peacock's failure to object, subjects her current objection to plain error review. As we found above, though, the trial court properly exercised its discretion in considering the DVD, thus we find no prejudice to Peacock.

{¶28} Finally, Peacock contends that the trial court erred in reviewing the DVD as "additional evidence," because the DVD was available immediately following the Magistrate's hearing. We disagree based upon our foregoing analysis. Above, we found that the DVD did not fall within the meaning of "additional evidence" as it appears in Civ.R. 53(D)(4)(b). Instead we found the

---

[2] While we find that a trial court may *sua sponte* obtain and consider transcripts of a hearing before a Magistrate, even in spite of an objecting party's failure to file the transcripts, we are not suggesting that trial courts freely take such action. We believe that the better procedure is to require full compliance with the Civil Rules unless the trial court perceives a question with the findings of the Magistrate that should be resolved prior to issuing judgment.

DVD was alternative technology, and thus served as a permissible substitute for the transcript. Accordingly, since the DVD is not "additional evidence," we find that Peacock's contention lacks merit.

{¶29} In light of the foregoing, we find that a trial court, in spite of an objecting party's failure to file transcripts, may *sua sponte* obtain and consider the transcripts or alternative technology when reviewing the Magistrate's decision. Accordingly, we overrule Peacock's first, second, and third assignments of error.

*Assignments of Error Nos. IV and V*

{¶30} In her fourth and fifth assignments of error, Peacock contends that the trial court erred in changing the exchange point as it was against the manifest weight of the evidence. Specifically, Peacock contends that the trial court improperly considered evidence, and that the record clearly reflects her desire that Anna, not Sidney, be the exchange point. We disagree.

{¶31} An appellate court reviews the trial court's decision to adopt, reject or modify the Magistrate's decision under an abuse of discretion standard. *Figel v. Figel,* 3d Dist. No. 10-08-14, 2009-Ohio-1659, ¶9, citing *Marchel v. Marchel,* 160 Ohio App.3d 240, 2005-Ohio-1499, ¶7. However, when reviewing the Magistrate's decision, the trial court "shall undertake an independent review as to the objected matters to ascertain that the Magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53 (D)(4)(d); *Goldfuss v.*

*Traxler,* 3d Dist. No. 16-08-12, 2008-Ohio-6186, ¶7. Accordingly, the trial court is free to adopt, reject, or modify the decision of the Magistrate under its de novo review. *Id.,* citing *Stumpff v. Harris,* 2d Dist. No. 21407, 2006-Ohio-4796, ¶16; Civ.R. 53(D)(4)(b). Furthermore, a trial court's decision will not be reversed on appeal as being against the manifest weight of the evidence as long as there is some competent, credible evidence to support the decision. *Cichanowicz v. Cichanowicz,* 3d Dist. No. 3-08-04, 2008-Ohio-4779, ¶20, citing *Duer v. Moonshower,* 3d Dist. No. 15-03-15, 2004-Ohio-4025, ¶15.

**{¶32}** In finding that the exchange point was never contested the trial court highlighted two exchanges. In the first exchange, Peacock was asked what she would ask the trial court to find for an exchange point, to which she responded the Sidney Police Department would be adequate. The second exchange occurred during Peacock's closing statement, when she conceded that Sidney is in the middle and a good meeting point.

**{¶33}** We first note that Peacock, in her fourth assignment of error, contends that the trial court erred in considering her counsel's statement during closing arguments, as it was not evidence. While we agree with Peacock's contention, we do not find that Peacock was prejudiced by the trial court's consideration of the statement. Had the trial court not considered the statement,

there is other competent, credible evidence in the record that supports the trial court's decision.

{¶34} Peacock also contends that the record contains evidence that the parties never agreed to Sidney as the exchange point. First, Peacock cites her testimony from the May hearing, during which she requests the temporary order, which listed Anna as the exchange point, become a permanent order. Second, Peacock cites her July testimony, during which she attempted to explain her statement concerning the adequacy of the Sidney Police Department as an exchange point. Last, Peacock cites her testimony that the parties never agreed that Sidney would be the exchange point.

{¶35} While we may have come to a different conclusion than that of the trial court in reviewing the evidence presented, our role is only to review for an abuse of discretion. Reviewing the record in its entirety, we find that the trial court's decision was supported by some competent, credible evidence.

{¶36} We begin with the live testimony received by the trial court in July 2010. During that hearing Peacock attempts to explain her statement concerning the adequacy of the Sidney Police Department as an exchange point. The trial court also receives a substantial amount of testimony, from both Tewalt and Peacock, concerning the existence of an agreement, in which the parties agreed that the Sidney Police Department would be the exchange point. While all the

testimony was relevant, the credibility of the witnesses and the weight given to the testimony was squarely within the purview of the trial court's judgment. Considering the trial court's ultimate finding, it appears that the trial court afforded little weight to either party's testimony, a choice well within its discretion.

{¶37} Having apparently found little credibility in the parties' live testimony, the trial court turned to the DVD recording of the May hearing. During that hearing Peacock requested that the temporary order, which listed Anna as the exchange point, become permanent. Immediately preceding this request, however, Peacock stated that the Sidney Police Department was an adequate exchange point. Faced with conflicting testimony from the same individual, the trial court, sitting as the trier of fact, apparently found Peacock's statement regarding the adequacy of Sidney as the exchange point more credible. This finding was well within the trial court's discretion.

{¶38} In light of the foregoing, we find that the trial court did not abuse its discretion in finding that the exchange point was never in contention, as there was competent, credible evidence to support its finding. Accordingly, we overrule Peacock's fourth and fifth assignments of error.

*Assignment of Error No. VI*

**{¶39}** In her sixth assignment of error, Peacock contends that the trial court erred in changing the exchange point, as it was not in the best interests of their Child. We disagree.

**{¶40}** We first note that Peacock never raised the Child's best interests, as it pertained to the exchange point, in the proceedings below. Moreover, Peacock does not now claim that the trial court's decision, as it pertains to the best interests of the Child, resulted in plain error. Civ.R. 53(D)(3)(b)(iv). Accordingly, we need not address the contention on appeal. Id.

**{¶41}** However, in considering the merits of this contention we find that only Peacock's interests were at issue, a fact made clear in the following colloquy between Tewalt's trial counsel and Peacock:

> **Q.  So, halfway between Anna and Piqua would be the Sidney location?**
>
> **A.  Yes.**
>
> **Q.  Is that an appropriate location for the exchange?**
>
> **A.  I don't believe so.**
>
> **Q.  Why?**
>
> **A.  Fear of safety.**
>
> **Q.  Well, you, you've been exchanging at the police department in Anna.  Have you ever had occasion to use Anna police?**

**A.   No.**

**Q.   Would you not be as safe at Sidney as you would in Anna?**

**A.   I don't believe so.**

**Q.   Why?**

**A.   I would have to make sure somebody would be with me, would be watching the pickups.**

**Q.   What difference is it between Anna PD and Sidney PD?**

**A.   You can see Anna PD from my residence so when Rylee gets picked up and dropped off, I have somebody watching for my safety.**

July 21, 2010, Hearing Tr., p. 12.  It is clear from this testimony that Peacock was only concerned with her safety.  Had she been concerned for her Child's safety she would have, at the very least, testified that she wanted someone watching the exchange for her Child's safety as well.

{¶40} Accordingly, we overrule Peacock's sixth assignment of error.

{¶41} In reviewing the manner in which Tewalt presented his disagreement with the Magistrate's Decision we note first that there is a specific procedure for objections provided for in Civil Rule 53(D)(3)(b), and no procedure for a "motion to correct clerical errors."  It would appear that Tewalt either was attempting to utilize Civil Rule 60(A) which is only proper after a final judgment, or that he was simply attempting to avoid the cost of a transcript which would be necessary to

properly present his complaint by means of an objection. We further note that the trial court found it necessary to review a DVD of at least a portion of the hearing held before the Magistrate, which is further indication that a transcript should have been provided to the trial court. We find it unreasonable to allow Tewalt to avoid that expense and to have him shift it to Peacock simply by designating his objection as a motion to correct a clerical error. It is clear to us that the Magistrate's finding was factual in nature, not clerical. We will therefore assess the cost of this appeal to Tewalt, including the costs of all transcripts.

{¶42} Having found no error prejudicial to Peacock herein, in the particulars assigned and argued, we affirm the judgment of the trial court. Pursuant to App.R. 24(A), costs of appeal, including the costs associated with the creation and filing of the transcripts, are assessed to Appellee. This cause is remanded to the trial court for execution of the judgment for costs.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**